PHILIP J. STEC ET AL., APPELLEES, v. COUNTRYSIDE OF HASTINGS, INC., A NEBRASKA CORPORATION, ET AL., APPELLANTS.

212 N. W. 2d 561

Filed November 23, 1973. No. 38938.

Gerald T. Whelan and Duane L. Stromer, for appellants.

Ronald R. Fitzke, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

In question is the meaning of a statutory requirement for amendment of a municipal regulation of zoning. In a declaratory judgment action, the District Court adjudged that the requirement governed a municipal grant of a special use permit for a mobile home park. The applicant for the permit and the city appeal.

The applicant, Countryside of Hastings, Inc., sought the permit for a tract of approximately 25 acres located within the extraterritorial zoning jurisdiction of Hastings, a city of the first class. Objections were signed by almost all the adjacent resident-landowners, but the signatures were not acknowledged. Representatives of the protesters presented the petition to the city council of Hastings. The council heard the matter, but did not learn that the protesters represented approximately 100 percent of the adjacent owners. The application was approved by the council on a roll call vote of 5 ayes and 3 nays, less than a three-fourths majority.

The statutory provision in question reads in part as follows: "Such regulations, restrictions, and boundaries may . . . be amended, supplemented, changed, modified, or repealed. In case of a protest against such change, signed by the owners of twenty percent or more . . . of the lots . . . immediately adjacent . . ., such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of section 19-904 relative to public hearings and official notice shall apply equally to all changes or amendments." § 19-905, R. R. S. 1943. The substance

of the provision has been in effect since adoption of the zoning statute in 1927. See Laws 1927, c. 43, § 5, p. 183.

The record contains two sections of the Hastings code. Section 4-331 requires the protest to be "duly signed and acknowledged." Section 4-318 provides for special use permits: "Any of the following uses may be located in any district by special Use Permit of the City Council . . . under such conditions as to operation, site development, parking, signs, and time limit as may be deemed necessary in order that such use will not seriously injure the appropriate use of neighboring property, and will conform to the general intent and purpose of this Ordinance. Such uses shall comply with the height and area regulations of the district in which they may be located, except that radio, television and microwave towers and drive-in theatre screens may exceed said height regulations." The section enumerates over 20 uses, some with restrictions. The important one here reads:

"21. . . . trailer or mobile homes, subject to the following: a. The number of trailers . . . shall not exceed the number obtained by dividing the total square foot area of the site by 1,200. b. A distance of at least . . . (10) feet . . . be maintained between . . . trailers . . . . d. Each trailer camp shall provide sanitary facilities and water supply in accordance with . . . (municipal) standards . . . . No special use permit (or certificate of occupancy) for a trailer camp shall be granted until the plans have been approved by the City Health Officer, City Engineer, Gas, Plumbing, and Electrical Inspector. . . . All special use permits for trailer camps shall be temporary and shall be valid only during the period that the camp complies with the (above) requirements."

The two sections of the Hastings code do not differentiate between mobile homes and travel trailers. The Uniform Standard Code, on the other hand, does

so.  See § 71-4603 (1) and (2), R. R. S. 1943.

Some statutory language refers generally to structures, use of land, formation of districts, and uniformity in language similar to that of the act of 1927.  It also provides for a comprehensive development plan.  See §§ 19-901 through 19-903, R. R. S. 1943.

A statutory section central to the problem reads: "The (municipal) legislative body . . . shall provide for the manner in which such regulations and restrictions, and the boundaries of such districts, shall be determined, established, and enforced, and . . . amended, supplemented, or changed.  . . . (They shall not) become effective until after a public hearing (and notification) . . . ." § 19-904, R. R. S. 1943.  At the periphery of the problem lies the Uniform Standard Code for Mobile Homes and Travel Trailers.  §§ 71-4601 through 71-4609, R. R. S. 1943.

Countryside and the city argue that the municipal code requirement for acknowledgments of signatures by protesters was valid and applicable.  They assert that the code requirement is stricter than is the statutory demand of a three-fourths majority vote and that the lack of the acknowledgment necessitates reversal of the District Court judgment.

The argument has a semblance of support from a writer critical of rezoning provisions restricted by the necessity of frontage consents.  See Comments, 20 Univ. Kan. Law Rev. 109 (1971).  The decisions in jurisdictions other than Nebraska are not uniform.  See Van Iden, Zoning Restrictions Applied to Mobile Homes, 20 Cleve. Law Rev. 196 at 200 (1971).

There are two arguments the other way.  First, whether the Hastings or the statutory provision is stricter depends upon one's vantage point.  Second, if the statutory procedure is detailed the municipality must follow it.  See Carter, "Problems in the Regulation and Taxation of Mobile Homes," 48 Iowa Law Rev., 16 at 21 (1962).

In our opinion the acknowledgement requirement in the Hastings code was unenforceable because of the statutory provision for a three-fourths majority. In respect to land use, councils of political subdivisions in the United States possess a variety of means of regulation. One has been the conditional use permit in the sense of a special exception use. It exists under circumstances already set forth in an ordinance or regulation. See, Antieau, Cases and Problems on the Law of Municipal Corporations, 78 (4th Ed., 1964); 3 Anderson, American Law of Zoning, § 15.01, pp. 83 to 86 (1968); Bair and Bartley, The Text of A Model Zoning Ordinance, 55 (3d Ed., 1966); Bartke and Gage, "Mobile Homes: Zoning and Taxation," 55 Cornell Law Rev., 491 at 496 to 514; Mandelker, The Zoning Dilemma, 65 (1971); 1 Metzenbaum, Law of Zoning, 813, 814 (2d Ed., 1955); 23 Nimlo Municipal Law Rev., 442 (1960); 1 Rathkopf, The Law of Zoning and Planning, 17-9 through 17-15 (1969); 2 Rathkopf, op. cit., 54-1 (1972); Roberts, Land Use Planning, 6-81 through 6-85 (1971). Countryside applied for such a conditional use permit. Mobile home parks have been the subject of conditional use permits which have received approval from commentators. See, 3 Anderson, op. cit., § 15.01, pp. 85, 86 (by implication); Raymond, Mobile Homes and Community Planning, Current Municipal Problems, 349 (1969). See, also, Hagman, Urban Planning and Land Development Control Law (1971); but see Lakin, "A Municipal Dilemma: The Not So Mobile Home," Current Municipal Problems, 46 at 49 (1972).

The sweep of the three-fourths majority requirement is a difficult question. Although the referent is broad in the use of such words as "amended, supplemented, changed, modified, or repealed," it does not specify implementation. See § 19-905, R. R. S. 1943. When the Hastings council approved the application of Countryside, it in form implemented its ordinance. We conclude, however, that the approval was tantamount to

the supplementing of a regulation within the meaning of the statutory provision in question. Therefore, the approval of a conditional use permit in the nature of a special exception use by the legislative body of a political subdivision is ordinarily subject to a statutory provision that requires a favorable three-fourths majority vote in event of requisite protests against a change or supplement of regulations.

Semantic skills can justify affirmance or reversal. It is our view that the statutory language does not mean that the voting requirement is moribund in respect to conditional use permits. This interpretation also aligns the statutory provision with requirements of notification and hearing.

The judgment is affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting.

The reference in section 19-905, R. R. S. 1943, to changes in zoning regulations, restrictions, and boundaries means changes in *zoning* of the land. It has no application to uses *permitted* under existing zoning subject only to the issuance of a special use permit.

Much can be said in favor of a policy that would apply the same requirements to special use permits that are applicable to changes in zoning. That, however, is a legislative matter which in this case was controlled by the zoning ordinance.

WHITE, C. J., joins in this dissent.